497 A.2d 1174

**RANDALL BOOK CORPORATION t/a Rye Book Store**

v.

**STATE of Maryland.**

**No. 52, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Oct. 4, 1985.

590

David N. Kuryk, Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County, and Anthony Gallagher, Asst. State's Atty. for Baltimore County, Towson, on brief), for appellee.

Argued before WEANT and BLOOM, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

BLOOM, Judge.

This "dirty books" case, as Horace Rumpole (Rumpole of the Bailey) might describe it,[1] involves an interplay between the First and Fourth Amendments to the United States Constitution. It also tends to demonstrate, in a negative manner, the wisdom of an observation made by the poet Hesiod some twenty-six centuries ago, that "right timing is in all things the most important factor." [2]

The case originated in the summer of 1981. Ordinarily, with "right timing," it would have reached us in its present posture long before the summer of 1984 and might well have resulted in a reversal of the 116 convictions from which this appeal was taken. As it is, because of the decisions handed down by the Supreme Court on July 5, 1984, in *United States v. Leon*, 468 U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677, and *Massachusetts v. Sheppard*, 468 U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737, we reach the opposite result. We shall explain.

---

1. Mortimer, John. *Rumpole's Return.* Advanpress Ltd, 1983.

2. Not as dramatically, of course, as Senator Gerald Nye's selection of December 7, 1941, as an appropriate date to deliver an address to an America First rally.

### Background

Appellant, Randall Book Corporation, operated the Rye Bookstore in Reisterstown, Maryland. The store was divided into four sections, one section in the back being devoted to the display and sale of "adult" books, magazines and films.[3] For several years the Baltimore County police department kept the store under observation, hoping to find some violation of the law. Finally, on four occasions in March, May and June of 1981, Detectives Miller and Dunlap purchased magazines which they had selected from a display rack in the back room of Rye Book Store. Each sale resulted in the arrest and trial of the salesclerk for violation of Md.Ann. Code art. 27, § 416D, which provides:

§ 416D. *Displaying certain visual representations for advertising purposes.*

(a) Any person, firm or corporation is guilty of a misdemeanor if it knowingly displays for advertising purposes any picture, photograph, drawing, sculpture or other visual representation or image of a person or portion of the human body that depicts sadomasochistic abuse, sexual conduct or sexual excitement, or any verbal description or narrative account of these activities or items.

(b) Any person, firm or corporation is guilty of a misdemeanor, if it knowingly permits any such display on premises owned, rented or managed by it.

"Sadomasochistic abuse," "sexual conduct," and "sexual excitement" as used in § 416D are defined in § 416A as follows:

(c) *Sadomasochistic abuse* means flagellation or torture by or upon a human who is nude, or clad in undergarments, or in a revealing or bizarre costume, or the condition of one who is nude or so clothed and is being fettered, bound, or otherwise physically restrained.

---

**3.** Another section was set aside for "peepshows" but was not in use at any time pertinent to this case.

(d) *Sexual conduct* means human masturbation, sexual intercourse, or any touching of or contact with the genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex, or between humans and animals.

(e) *Sexual excitement* means the condition of human male or female genitals, or the breasts of the female, when in a state of sexual stimulation, or the sensual experiences of humans engaging in or witnessing sexual conduct or nudity.

The first two prosecutions resulted in convictions and fines of $250 each, the third salesclerk was given probation before judgment and the fourth was awaiting trial as of June 25, 1981, when Detectives Miller and Dunlap decided to adopt a new strategy in their campaign to prevent the citizens of Reisterstown from being offended by the sight of salacious material "displayed for advertising" in the "adults only" section in the rear of the Rye Book Store. The prosecution of appellant's salesclerks on a retail basis, *i.e.,* for one book or magazine at a time, did not seem to have the desired effect of closing the book store, although it did cause a turnover in personnel. Accordingly, on June 25, 1981, the officers made an application to a judge of the District Court of Maryland for a warrant to seize and remove from appellant's store books, magazines, photographs, films, and posters "that are displayed for advertising purposes which depict sadomasochistic abuse, sexual conduct, and sexual excitement." The application for the warrant and supporting affidavit were extremely thorough and detailed. They described the premises and, in general terms, the types of scenes and activities depicted on the covers of books and magazines on display in the back room of the book store. Attached to the affidavit, by way of samples, were photocopies of the front covers of the four magazines previously purchased by the officers and used in the prosecutions of appellant's salesclerks. Two of them, "Taskmaster," Volume 1, Number 1 and "Bondage Movie

Review," had color photographs on the front and back covers of nude or scantily clad women bound and gagged. A third, "Men of Action," No. 1, depicted on its cover a nude man bound and gagged. The fourth, "Hot Dog," had a color photograph on the front cover of a woman performing fellatio on a male and a photograph on the back cover of the man performing an act of cunnilingus on the woman. The application and affidavit set forth the officers' prior activities and observations, the prosecutions of the salesclerks and results thereof and continued with the averment that on June 24, 1981, the affiants revisited the store and found that it continued to display for advertising purposes, in violation of art. 27, § 416D, the same types of materials previously described and exampled by the annexed photocopies.

On the basis of the application, affidavit and exhibits, the District Court judge issued the requested warrant to enter and search appellant's premises and to "[s]eize and remove all books, magazines, photographs, films and posters that are displayed for advertising purposes which depict sadomasochistic abuse, sexual conduct, and sexual excitement." Armed with that warrant, Detective Dunlap and several other officers presented themselves at Rye Book Store about 11:00 a.m. on June 26, 1981, and, over the next several hours, they seized and carried away some 733 items that had been on display racks or otherwise exhibited to prospective purchasers. Materials in boxes or in cabinets were not taken by the police. From the 733 items seized, the police selected 126 magazines as bases for prosecuting appellant.[4] Three separate charging documents were filed in the District Court, charging appellant with a total of 252 offenses, viz., one count for displaying prohibited material for advertising purposes (art. 27, § 416D(a)) and one count for knowingly permitting such material to be displayed for advertising purposes (art. 27, § 416D(b)) for each magazine.

---

4. The remaining items were never returned to appellant nor was their eventual disposition ever disclosed.

Appellant requested a jury trial on each charging document and the cases were removed to the Circuit Court for Baltimore County, where they were consolidated.

Appellant moved (1) to dismiss the charging documents on the ground that the statute upon which the charges were based was unconstitutional and (2) to suppress the evidence seized from its store on the grounds that (a) there was insufficient probable cause for the issuance of the warrant and (b) the seizure was unreasonable despite the warrant. The court denied the suppression motion but granted the motion to dismiss, holding that art. 27, § 416D was unconstitutionally vague and overbroad.

The State appealed from the dismissal and appellant cross-appealed from the denial of its suppression motion. Before this court rendered its decision, the Court of Appeals ruled on the constitutionality of § 416D. It held, in *Smiley v. State*, 294 Md. 461, 450 A.2d 909 (1982), that in enacting § 416D the legislature was broadly prohibiting advertising depicting obscenity and, as such, although the statute does not mention the word "obscenity," it embodies the latest Supreme Court definition of obscenity. So construed, the section was held to be constitutional and not overbroad. Bound by that decision, we reversed the trial court's dismissal of the charging documents. Since there could be no appeal from the denial of a motion to suppress, absent a judgment of conviction, we dismissed appellant's cross-appeal. *State v. Randall Book Corporation*, 53 Md.App. 30, 452 A.2d 187 (1982). The Court of Appeals denied appellant's petition for certiorari, 295 Md. 441 (1983), as did the Supreme Court of the United States, 464 U.S. 919, 104 S.Ct. 286, 78 L.Ed.2d 263 (1983), with Justices Brennan and Marshall dissenting. Appellant's petition for rehearing was also denied. 464 U.S. 1013, 104 S.Ct. 539, 78 L.Ed.2d 718 (1983).

Eventually the case found its way back to the circuit court, where appellant filed a supplemental motion to dismiss and a supplemental motion to suppress, both based

upon the *Smiley* interpretation of § 416D. The supplemental motion to dismiss asserted, *inter alia,* that in the absence of any claim of obscenity there was no probable cause for the issuance of the charging documents and that the charging documents were defective for failure to allege an essential element of the offense, namely, obscenity. The supplemental motion to suppress asserted that, since obscenity was never considered, the application for the search warrant did not contain probable cause for its issuance. It also contended that the search warrant was overbroad and, therefore, a general warrant; that the massive seizure was unlawful; and that Randall Book Corporation was not afforded an adversary hearing prior to seizure to determine whether the material seized was obscene or non-obscene literature protected by the First Amendment. Both motions were denied, and the case was finally brought to trial before a jury in July 1984.

The State abandoned all counts based upon subsection 416D(b), knowingly permitting the material to be displayed for advertising purposes, leaving 126 counts (one for each magazine named in the charging documents) based upon subsection 416D(a), exhibiting the magazine for advertising purposes. The jury returned 116 guilty verdicts and 10 not guilty verdicts, and the court imposed a fine of $500 for each conviction.[5] Payment of the fines was suspended pending the outcome of this appeal.

### Issues

Although the convictions necessarily required a finding that the covers of the magazines were obscene, we are not asked by appellant to determine whether they are in fact obscene under the test stated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Nor are we asked to determine whether the proprietor of a bookstore who places magazines on a rack in a room from which minors are intended to be excluded is "displaying" the

---

**5.** The maximum fine for each conviction is $1000.

covers of those magazines "for advertising purposes" within the meaning of the statute, or whether, under the Rule of Lenity, a single display of 116 magazines in violation of § 416D is punishable as one offense or as 116 offenses.[6] The only issues raised by appellant are:

(1) Was the massive seizure of hundreds of books, magazines and films from defendant book store pursuant to a search and seizure warrant which failed to address the First Amendment implications of the seizure, improper, and hence, did the trial court err in failing to grant defendant's motion to suppress the evidence obtained as a result of the search and seizure?

(2) Is Section 416D of article 27 unconstitutionally overbroad in its application?

(3) Did the lower court err in allowing the State to re-open its case?

(4) Did the trial court err by prohibiting applicant from reading the preamble to the statute in closing argument?

Our answer to each of these questions being "No," we will affirm the judgments of the circuit court.

I.

Appellant first contends that all of the materials seized by the police and placed in evidence should have been suppressed at trial because the warrant on which the seizure was made was improper and defective. Appellant argues, first, that the application for the warrant and its supporting affidavit did not provide sufficient facts and background for the issuing judge to find probable cause to believe that the statute was being violated and second, that the warrant as issued was overbroad, that is, that it lacked the requisite specificity to apprise the police of which partic-

---

**6.** For a discussion of the Rule of Lenity, see *Johnson v. State*, 56 Md.App. 205, 212–16, 467 A.2d 544 (1983).

ular items they could seize or to guard against the wrongful seizure of material protected by the First Amendment.

Elaborating on its argument that the application and affidavit did not establish probable cause to conclude that appellant was in violation of the statute, appellant asserts that the application and affidavit failed to contain a description sufficient to allow the issuing judge to conclude that any of the magazines or other materials seized fell within the purview of the statute. This assertion is unfounded. The affiants provided the judge with an adequate description of the premises in which the materials were displayed and the nature of the pictures on the covers of the magazines displayed therein, graphically illustrating those descriptions by exhibiting samples of similar material they had earlier purchased. The issuing judge had probable cause to believe that what the detectives described both by word and example constituted material which violated § 416D.

The affiants offered no improper conclusions of their own that probable cause existed, as would be proscribed by *Grimm v. State,* 7 Md.App. 491, 256 A.2d 333 (1969). Rather, affiants stated that they were in appellant's store, that the materials described and exhibited with their application were found by them in the store and purchased by them from appellant, and that the great majority of the other material in the adult section of the store was still in the same condition and appearance as it was when the observations were made. The determination of probable cause was made only by the judge after he was presented with the "appropriate background facts." *Brooks, Keaton and Patterson v. State,* 13 Md.App. 151, 156, 282 A.2d 516 (1971).

The standard for probable cause in a case such as this has been established in Maryland for some time.

Probable cause, which is less than certainty or demonstration but more than suspicion or possibility, is to be determined by the judge or justice who issues the war-

rant, and if a prudent and cautious man would be justified from the facts presented to show its existence in believing that the offense had been or was being committed, the warrant properly may be issued.

*Henson v. State,* 236 Md. 518, 521, 204 A.2d 516 (1964) (quoted by *Henderson v. State,* 243 Md. 342, 344, 221 A.2d 76 (1966)). That standard was satisfied in this case.

■ Having examined the four corners of the application and affidavit alone, as required by *Everhart v. State,* 20 Md.App. 71, 82, 315 A.2d 80 (1974), we conclude that an adequate background was presented for the judge to find probable cause to believe that appellant was violating art. 27, § 416D by displaying in its store, for purpose of advertising, material proscribed by the statute.

■ Appellant's next argument brings into focus the interplay between the First and Fourth Amendments. Each of those amendments is designed to protect entirely different aspects of an individual's rights and liberties from invasion by the federal government and, through the Fourteenth Amendment, by the States. The First Amendment affords no protection against unreasonable searches and seizures of an individual's person or property; the Fourth Amendment provides no protection for an individual's right of free speech. But literature protected by the First Amendment—books, magazines and films that are not obscene and are neither the fruits, instrumentalities, nor evidence of crime—constitute property that the Fourth Amendment protects from unreasonable search and seizure. It is in that context that we examine appellant's contention that the search warrant in question was overbroad, *i.e.,* that it was not precise enough to prevent the officers who executed it from seizing material protected by the First Amendment. Where material sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with "scrupulous exactitude." *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

■ Material may not be seized merely because it depicts sadomasochistic abuse, sexual conduct, or sexual excitement. To be subject to seizure, it must also be obscene as that term may from time to time be defined or re-defined by the Supreme Court. (The current definition is set forth in *Miller v. California, supra.*) Otherwise, it may be possessed and exhibited under the shield of the Constitution. It was precisely because a literal reading of § 416D would have prohibited the display of First Amendment protected material that the Court of Appeals found it necessary to read "obscenity" into that statute. In *Smiley v. Smith, supra,* the Court found that "the legislature in enacting this section was broadly prohibiting advertising depicting obscenity" and concluded that the *Miller* standards for obscenity are embodied in § 416D. 294 Md. at 464–65, 450 A.2d 909.

■ Reading the search warrant in the instant case in light of *Smiley* presents the State with a dilemma. If the warrant is read literally, it appears to authorize the seizure of material protected by the First Amendment and would be invalid for that reason. If, on the other hand, we read into the warrant, as the *Smiley* court read into the statute, an implied requirement that the material must also be obscene, the police would be given unfettered discretion to determine which materials are obscene, a matter which may only be determined by a neutral and detached judicial officer. The Fourth Amendment does not permit the issuance of a warrant that leaves it entirely to the discretion of the officers conducting the search to decide what items are obscene and therefore subject to seizure. *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); *Stanford v. Texas, supra; Marcus v. Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

■ Prior to July 5, 1984, when the Supreme Court delivered its opinions in *United States v. Leon, supra,* and *Massachusetts v. Sheppard, supra,* we were constrained to exclude evidence unlawfully seized, the exclusionary rule

adopted by the Supreme Court in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), having been extended to state prosecutions by *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). *Belton v. State,* 228 Md. 17, 178 A.2d 409 (1961). In view of *Leon* and *Sheppard,* however, it is immaterial whether the search warrant in this case was fatally defective either as authorizing the seizure of First Amendment protected material or as permitting the police officers to determine what material is obscene. In *Leon* the Supreme Court unequivocally held that, even if a search warrant is defective, evidence seized by virtue of the warrant need be suppressed "only if the officers were dishonest or reckless or could not have harbored an objectively reasonable belief in the existence of probable cause." 468 U.S. at ——, 104 S.Ct. at 3423 (1985). Appellant has not asserted that the judge who issued the warrant abandoned his proper role or that the police officers were dishonest or reckless, nor could appellant persuasively argue that the officers "could not have harbored an objectively reasonable belief in the existence of probable cause." Indeed, an examination of the record leads to the inescapable conclusion that the officers were as scrupulous in their efforts to protect appellant's Fourth Amendment rights as they were zealous in their efforts to prosecute appellant for exceeding its First Amendment privileges. We therefore hold, in accordance with the *Leon* standards, that the objective good faith of the officers in executing this warrant would render any defect in the warrant irrelevant. The trial court did not err in refusing to suppress the evidence.

■ We see no reason why the principles of *Leon* and *Sheppard* should not be applied to facts which occurred before those decisions were rendered. Although a Fourth Amendment decision making a "clear break with the past" should not be applied retroactively, *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969), neither *Leon* nor *Sheppard* was a clear

departure from prior decisions. As Justice Brennan pointed out in his dissenting opinion, once the Court had enunciated, in *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974), that the exclusionary rule is merely a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right," the eventual adoption of a "good faith exception" to the exclusionary rule was entirely predictable. 104 S.Ct. at 3430. *See also, Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), in which the Court held that evidence obtained through a search incident to an arrest made in good faith reliance upon an ordinance that was later declared to be unconstitutional need not be excluded. In any event, although the supplemental motion to suppress was argued and decided prior to *Leon* and *Sheppard*, the trial itself took place after *Leon* and *Sheppard* were decided.

## II.

Appellant's second contention is that § 416D is unconstitutionally overbroad. This very issue was decided by the Court of Appeals in *Smiley, supra,* leaving no room for argument here; § 416D is not unconstitutional.

Appellant also asserts that § 416D denies appellant due process and equal protection of the law "insofar as it provides First Amendment material less protection against censorship and suppression under section 416A–416G than if charged with obscenity pursuant to Sections 417—423 of the Annotated Code of Maryland in that Section 417 *et seq.* requires [sic] an adversary hearing prior to seizure of the material." The *Smiley* court, however, held that § 416D, which is the only section at issue, addresses only material that is *obscene* as defined by *Miller* and is therefore not First Amendment material.

## III.

Appellant's third contention is that the trial court erred in allowing the State to reopen its case. It appears from the

record that the State had successfully introduced into evidence the search warrant application and affidavit. After the State rested its case, the court granted appellant's notice to strike this evidence, which included the information that similar material had been displayed for several months before these alleged offenses. Since that information was deemed necessary to prove the element of scienter, the court allowed the State to elicit it by oral examination of Detective Dunlap.

■ The conduct of the trial is a matter of wide discretion with the trial judge. We would not hold that a judge has abused his discretion unless his action was of such magnitude as to amount to the denial of a fair trial. As this court noted in *Spillers v. State:*

> We have reviewed this contention in a number of cases and have uniformly held that the trial judges are vested with the widest discretion in the conduct of trials. Ordinarily, there is no abuse of discretion in permitting the State to reopen its case for the purpose of proving important or even essential facts to support a conviction. . . .

10 Md.App. 643, 649, 272 A.2d 49 (1971). Under the circumstances the trial judge did not abuse his discretion in permitting the State to reopen its case.

## IV.

■ Finally, appellant argues that the trial court erred in not allowing its counsel to read the preamble of the statute to the jury. We do not agree. To allow the jurors to consider the preamble would be appropriate only if they were to be the judges of the law as well as the facts. The jurors are judges of the law only when there is a dispute as to the meaning of the law. There was no dispute as to the meaning of the law in this case. Appellant attempted to argue to the jury its interpretation of the *purpose* of the statute, not its *meaning.* The trial court is well within its discretion to prohibit arguments or references to the meaning of a statute when that meaning is not disputed.

Appellant contends that the purpose of the statute is to protect minors from exposure to materials such as those involved here and that the jury was entitled to consider this in determining whether the statute was applicable. This contention, however, was disposed of in *Smiley*, where the Court said: "Section 416D is the only section [out of the seven sections included in art. 27, §§ 416A–G] that is not specifically directed towards minors. We conclude that the legislature, in enacting this section was broadly prohibiting advertising depicting obscenity." 294 Md. at 464. We hold that the court did not abuse its discretion with respect to appellant's closing argument.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.