558 A.2d 715

RANDALL BOOK CORPORATION

v.

STATE of Maryland.

No. 135, Sept. Term, 1987.

Court of Appeals of Maryland.

June 7, 1989.

316

David N. Kuryk, Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

McAULIFFE, Judge.

Eight years ago, Baltimore County detectives executed a search warrant at the Rye Book Store in Reisterstown, Maryland. They seized 733 items that the detectives believed fell within the search warrant's description of "all books, magazines, photographs, films and posters that are displayed for advertising purposes which depict sadomasochistic abuse, sexual conduct, and sexual excitement." Appellant, as owner and operator of the book store, was thereafter charged with a total of 252 offenses, based upon 126 different magazines which had been seized. At trial,[1] the State abandoned half the charges, leaving one charge of a violation of Maryland Code (1957, 1982 Repl.Vol.) Art. 27,

---

1. Prior to trial, appellant moved to dismiss all charges on the ground that the statute upon which the charges were based was unconstitutionally vague and overly broad. The Circuit Court for Baltimore County granted the motion, but the Court of Special Appeals reversed, holding that our decision in *Smiley v. State,* 294 Md. 461, 450 A.2d 909 (1982), had judicially engrafted the condition of obscenity upon the statute, which in turn triggered the mandatory criteria of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and thus gave sufficient definition to the statute. *State v. Randall Book Corp.,* 53 Md.App. 30, 452 A.2d 187 (1982), *cert. denied,* 295 Md. 441, *cert. denied,* 464 U.S. 919, 104 S.Ct. 286, 78 L.Ed.2d 263, *reh'g denied,* 464 U.S. 1013, 104 S.Ct. 539, 78 L.Ed.2d 718 (1983).

§ 416D(a) for each of the 126 magazines. That statute provided:

> Any person, firm or corporation is guilty of a misdemeanor if it knowingly displays for advertising purposes any picture, photograph, drawing, sculpture or other visual representation or image of a person or portion of the human body that depicts sadomasochistic abuse, sexual conduct or sexual excitement, or any verbal description or narrative account of these activities or items.

The jury found appellant guilty on 116 counts, and not guilty on the remaining 10 counts. Judge Cullen M. Hormes imposed a fine of $500 for each conviction. All convictions were affirmed on appeal. *Randall Book Corp. v. State*, 64 Md.App. 589, 497 A.2d 1174 (1985), *cert. denied*, 305 Md. 175, 501 A.2d 1323 (1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1589, 94 L.Ed.2d 778 *reh. denied*, 481 U.S. 1060, 107 S.Ct. 2204, 95 L.Ed.2d 859 (1987).

Having exhausted all avenues of direct appeal, appellant mounted a collateral attack by filing a motion to correct an illegal sentence.[2] This motion was denied and appellant again appealed. We issued a writ of certiorari before consideration by the Court of Special Appeals.

Appellant contends that the aggregate of sentences on the 116 counts for which it was convicted are illegal because: 1) the sentences constitute multiple punishment for the same offense in violation of double jeopardy protections; 2) the sentences are cruel, unusual, and disproportionate; and 3) the sentences were imposed for the improper purpose of putting appellant out of business. The State has filed a motion to dismiss the appeal, and additionally argues that the sentences were legal.

I.

■ Initially, we consider the State's contention that appellant has no right to appeal from the denial of its motion

---

**2.** Maryland Rule 4–345 provides that "[t]he court may correct an illegal sentence at any time."

to correct the allegedly illegal sentences. The authority advanced by the State in support of this argument is *Valentine v. State*, 305 Md. 108, 501 A.2d 847 (1985). In *Valentine*, this Court held that although the defendant could have attacked his sentence by way of direct appeal taken within 30 days of the imposition of the sentence, and thereafter could have challenged his sentence by a motion to correct an illegal sentence, he could not appeal from a denial of that motion. *Valentine* is not controlling here, however, because the factor that dictated the result in that case—the applicability of the Post–Conviction Procedure Act (PCPA) [3]—is not present.

As *Valentine* made clear, before the adoption of the PCPA in 1958, a defendant enjoyed the right of appeal from a denial of a motion to correct an illegal sentence, even though the motion may have been brought long after the right of direct appeal had expired. *Id.* at 115, 501 A.2d 847. *See also Roberts v. Warden*, 206 Md. 246, 255, 111 A.2d 597 (1955). In language that has changed little since its original adoption, the PCPA provides that

> [n]o appeals to the Court of Appeals or the Court of Special Appeals in habeas corpus or coram nobis cases, or from other common-law or statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment shall be permitted or entertained....

Art. 27, § 645A(e). Citing *Wilson v. State*, 227 Md. 99, 101, 175 A.2d 775 (1961), the *Valentine* Court said that the motion to correct an illegal sentence authorized by Maryland Rule 4–345 (then Rule 774a) must be considered a "statutory remedy" within the meaning of the PCPA, and that as a result "[t]he refusal of a trial judge to correct an illegal sentence can only reach the appellate courts when the procedures of the [PCPA] are followed." *Valentine, supra*, 305 Md. at 120, 501 A.2d 847.

---

3. Maryland Code (1957, 1987 Repl.Vol.,1988 Supp.) Art. 27, § 645A.

In the instant case, the PCPA has no application. That act applies only to persons who are "either incarcerated under sentence of death or imprisonment or on parole or probation." Art. 27, § 645A(a). *See McMannis v. State,* 311 Md. 534, 536 A.2d 652 (1988); Tomlinson, *Post–Conviction in Maryland: Past, Present and Future,* 45 Md.L. Rev. 927, 932–35 (1986). Appellant has been sentenced only to the payment of fines. It cannot avail itself of the alternative remedy provided by the PCPA. We hold that the language of subsection (e) of the PCPA which prohibits appeals "from ... statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment" has no application to this appellant, and that the right of appeal from the denial of a motion to correct an illegal sentence continues to exist in favor of a defendant who has never enjoyed the right to proceed under the PCPA.[4] The appeal is properly before us.

## II.

We next consider whether each of appellant's contentions may be considered pursuant to a motion to correct an illegal sentence. The State argues that each sentence is within the allowable statutory penalty for the offense and is therefore not illegal. It contends that appellant seeks to use Rule 4–345 to accomplish a second appeal, and to raise issues that could and should have been raised and decided on direct appeal. The State is partially correct.

The observation of the United States Supreme Court in a case involving the proper interpretation of Fed.R.Crim.P. 35, which then permitted a district court to correct an illegal sentence at any time, is instructive:

> [A]s the Rule's language and history make clear, the narrow function of Rule 35 is to permit correction at any

---

4. Concerning the State's right of appeal from the denial of a motion to correct an illegal sentence, *see Telak v. State,* 315 Md. 568, 556 A.2d 225 (1989).

time of an illegal *sentence*, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence. (emphasis in original) (footnote omitted).

*Hill v. United States*, 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). The Court noted that the failure of the trial judge to permit the defendant to make a statement in his own behalf constituted a violation of Fed.R.Crim.P. 32(a), but concluded that the error was not of the type that would permit a collateral attack under Rule 35:

> The sentence in this case was not illegal. The punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were the terms of the sentence itself legally or constitutionally invalid in any other respect. (footnote omitted).

*Hill, supra*, 368 U.S. at 430, 82 S.Ct. at 472.

 Appellant's argument that the sentences violate the Double Jeopardy Clause of the Fifth Amendment because multiple sentences were imposed for the same offense does allege an illegal sentence within the meaning of Rule 4–345. Similarly, we conclude that appellant's allegation that the aggregate of 116 sentences imposed constitutes cruel and unusual punishment prohibited by the Eighth Amendment is cognizable under a claim of an illegal sentence. Although these claims could have been raised under direct appeal, the failure to do so will not ordinarily constitute a waiver that will bar a collateral attack upon an illegal sentence. *Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949 (1985); *Carbaugh v. State*, 294 Md. 323, 327–28, 449 A.2d 1153 (1982); *Coles v. State*, 290 Md. 296, 303, 429 A.2d 1029 (1981).

 Appellant's remaining contention, that the sentencing judge was motivated by impermissible considerations, does not fall into the same category. It is true, as Chief Judge Murphy recently pointed out for the Court in *Teasley v. State*, 298 Md. 364, 370, 470 A.2d 337 (1984), that

whether the trial judge was motivated by ill-will, prejudice, or other impermissible considerations in imposing sentence will be considered on direct appeal. *See also Clark v. State*, 284 Md. 260, 273–76, 396 A.2d 243, *cert. denied*, 444 U.S. 858, 100 S.Ct. 119, 62 L.Ed.2d 77 (1979). However, while improper motivation may justify vacation of the sentence, it does not render the sentence illegal within the meaning of Rule 4-345. Appellant did not raise this contention on direct appeal and may not do so here. We add that we have reviewed the record on this point, and would find the argument without substance if it were before us.

### III.

■ The Double Jeopardy Clause of the Fifth Amendment protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *United States v. Halper*, — U.S. ——, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). There has been but one prosecution in this case, and thus we are concerned only with the third of these protections—the prohibition against multiple punishments for the same offense.

In determining what constitutes the "same offense" for double jeopardy purposes, we are accustomed to employing the test announced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> [T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

The *Blockburger* rule does not provide the final answer in cases involving multiple punishment because, when specifically authorized by the legislature, cumulative sentences for the same offense may under some circumstances be imposed after a single trial. *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983); *Albernaz v. United States*, 450 U.S. 333, 343–44, 101 S.Ct.

1137, 1144–45, 67 L.Ed.2d 275 (1981); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Accordingly, when dealing with the question of multiple punishments imposed after a single trial, and based on the same conduct, a critical question is one of legislative intent. The *Blockburger* test is helpful in such cases as an aid in determining legislative intent, but is not dispositive.

The multiple punishment-same trial problems arise from two different sets of circumstances: those involving two separate statutes embracing the same criminal conduct, and those involving a single statute creating multiple units of prosecution for conduct occurring as a part of the same criminal transaction. Illustrative of the two-statute cases are *United States v. Halper, supra; Missouri v. Hunter, supra; Albernaz v. United States, supra; Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *State v. Ferrell*, 313 Md. 291, 545 A.2d 653 (1988); *Dillsworth v. State*, 308 Md. 354, 519 A.2d 1269 (1987); *Whack v. State*, 288 Md. 137, 416 A.2d 265 (1980), *cert. denied*, 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981); *Newton v. State*, 280 Md. 260, 373 A.2d 262 (1977); and *Nance v. State*, 77 Md.App. 259, 549 A.2d 1182 (1988).

The multiple sentence-single statute problems, with which we are concerned here, embrace a wide range of factual situations and statutory provisions. The key, of course, is legislative intent. As helpful as the various rules of statutory construction may be in determining legislative intent, perhaps the soundest guidance comes from the Supreme Court's admonition that we give the language of a statute a "commonsensical meaning." *United States v. Universal Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). The cases in this area are not always easy to reconcile. One court will hold that the transportation of two females across state lines for immoral purposes may be punished only as a single offense when both women were transported at the same time and in a single vehicle, *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), while another will hold that every hand dealt in a

stud poker game may be separately punished as a gaming offense, *Johnson v. Commonwealth*, 201 Ky. 314, 256 S.W. 388 (1923). Consistent with its approach in *Bell*, the Supreme Court held in *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), that the shooting of two federal officers was punishable under the federal statute only as a single assault when the act involved the single discharge of a shotgun. *Compare Cousins v. State*, 277 Md. 383, 397, 354 A.2d 825 (1976) (defendant wielding a knife against two detectives while escaping may be punished for two assaults), and *Jackson v. State*, 63 Md.App. 149, 492 A.2d 346 (1985), *rev'd on other grounds*, 305 Md. 631, 506 A.2d 228 (1986) (defendant firing one shotgun blast at vehicle containing two officers may be punished for two assaults). However, the Supreme Court has also held that under a statute making it a crime to "cut ... any mail bag ... with the intent to rob or steal ... mail," the defendant could be given consecutive sentences for the cutting of each of three mail bags on a single occasion within a single railway car. *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915). The Court said that "[a]lthough the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged." *Id.* at 629, 35 S.Ct. at 711. The Court distinguished the cutting of the mail bags from "continuous offenses where the crime is necessarily, and because of its nature, a single one, though committed over a period of time." *Id.* at 629–30, 35 S.Ct. at 711.

As examples of true continuous offense cases, the Court cited *Crepps v. Durden*, 2 Cowper, 640, 98 Eng.Rep. 1283 (K.B. 1777) and *In re Snow*, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887). In *Crepps*, the defendant, a baker, was charged with four counts of "exercising his ordinary trade upon the Lord's Day," and given four cumulative sentences upon conviction of baking and selling four small loaves of bread on the same Sabbath. Lord Mansfield there held that the intent of Parliament was clear, and that under the

statute "there can be but one entire offence on one and the same day." He reasoned that to hold otherwise would be to authorize a separate penalty for each stitch taken by a tailor on the Sabbath and that the legislative body could not have intended such an absurd result. *In re Snow, supra,* involved a statute of the Territory of Utah which prohibited any male person from cohabiting with more than one woman. The grand jury, meeting in 1885, found the defendant had continuously cohabited with the same seven women for three years and returned three indictments, each charging an offense for a separate year. Recognizing that separate offenses may be committed by one and the same act, the Supreme Court said that this offense was clearly continuous in nature, permitting but one punishment. As the Court later commented in *Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977), "[t]he Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units."

We recently discussed the concept of continuing offenses in *Webb v. State,* 311 Md. 610, 536 A.2d 1161 (1988), where we held that cumulative penalties could not be imposed for the unlawful continuous carrying of a single handgun over a three hour period. We noted that the crime was one of possession, and therefore continuous in nature. We distinguished other offenses involving the *use* of handguns, and pointed out that

> [i]f the circumstances involving the use of the prohibited weapon put two persons at risk or concern two distinct incidents, there are two separate and distinct violations of the statute, permitting two convictions and two punishments. The unit of prosecution is the crime of violence.

*Id.* at 617, 536 A.2d 1161. *See also Brown v. State,* 311 Md. 426, 535 A.2d 485 (1988); *Battle v. State,* 65 Md.App. 38, 50, 499 A.2d 200 (1985), *cert. denied,* 305 Md. 243, 503 A.2d 252 (1986).

In attempting to determine what the legislature intended to be the unit of prosecution in this statute, we may

look to the penalty provided for each offense. If the maximum penalty permitted is quite substantial, that fact may militate against an intent to create multiple units of prosecution. *See Prince v. United States,* 352 U.S. 322, 327, 77 S.Ct. 403, 406, 1 L.Ed.2d 370 (1957). Moreover, in addition to considering the specific words of the statute, we may consider the general history and prevailing mood of the legislative body with respect to the type of criminal conduct involved. *See Albernaz, supra,* 450 U.S. at 343, 101 S.Ct. at 1144, quoting in part from *Gore v. United States,* 357 U.S. 386, 390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958), as follows:

[T]he history of the narcotics legislation in this country "reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter."

■ Appellant argues that the rule of lenity must be factored into the determination of legislative intent. That may or may not be true. When the legislative intent can be gathered from the various sources to which we have referred, that intent will be enforced, and the concept of lenity does not become an operable factor. If, however, the legislative intent cannot be determined, and the indicia point with equal force in opposite directions, the rule of lenity dictates that the matter be resolved in favor of the accused and against the possibility of multiple punishments. *Albernaz, supra,* 450 U.S. at 342-43, 101 S.Ct. at 1144-45.

■ In the case before us, the statute proscribes the knowing display for advertising purposes of

[a]ny picture, photograph, drawing, sculpture or other visual representation or image of a person or portion of the human body that depicts sadomasochistic abuse, sexual conduct or sexual excitement, or any verbal description or narrative account of these activities or items.

Art. 27, § 416D(a). It seems apparent that the legislature specifically intended to establish a small unit of prosecution. Indeed, a literal reading of the statute might subject a

defendant to separate punishment for each obscene picture or narrative account found in a magazine. That interpretation, while it might comport with the literal language used, would not afford the statute a "commonsensical meaning," and could create constitutional problems similar to those surrounding the hypothetical tailor who is charged with each stitch taken on the Sabbath. We think it much more likely that the legislature intended the unit of prosecution to be each separate magazine, film, book, or other similar item.[5]

Courts in other jurisdictions having similar statutes have concluded that the display or sale of each separate magazine constitutes the intended unit of prosecution. In *Educational Books, Inc. v. Com.*, 228 Va. 392, 323 S.E.2d 84 (1984), the Supreme Court of Virginia considered a statute that made it unlawful to "knowingly ... publish, sell ... or distribute or exhibit any obscene item." That Court held that where two officers purchased a total of nine magazines, all of which were different, imposition of fines of $1,000 for each of nine offenses did not violate the Double Jeopardy Clause. In *City of Madison v. Nickel*, 66 Wis.2d 71, 223 N.W.2d 865 (1974), the statute made it unlawful to knowingly "sell ... any obscene writing, picture, record or other representation or embodiment of the obscene." The Supreme Court of Wisconsin held that the sale of four different magazines at the same time, to the same person, by the same person, at the same place, would support four cumulative sentences.

In *State v. Von Wilds*, 88 N.C.App. 69, 362 S.E.2d 605 (1987), the statute prohibited the sale of "any obscene writing, picture, record or other representation or embodi-

---

**5.** We need not reach the question of whether the display of duplicate copies of the same obscene magazine could be made the subject of cumulative penalties. Each of the 116 magazines involved in this case was different and each was the subject of a separate charge and conviction. However, *see City of Madison v. Nickel,* 66 Wis.2d 71, 223 N.W.2d 865 (1974), upholding separate punishment for different magazines, but suggesting the result may have been different if four copies of the same magazine had been involved.

ment of the obscene." The Court of Appeals of North Carolina held that cumulative punishments did not offend the Double Jeopardy Clause even though the two films involved had been part of a single sale.

Considering the particular words of the Maryland statute, and also considering the attitude and apparent purpose of the legislature with respect to the display and sale of obscene materials, we conclude that the legislature intended the knowing display of each separate obscene magazine to constitute a separate offense, separately punishable.

The maximum punishment fixed by the legislature for each offense is a $1,000 fine or imprisonment for up to six months—a penalty not so severe as to suggest to us a contrary intent. To the extent that the aggregation of penalties might grow to a constitutionally impermissible size, appellant may, as it has done here, mount a separate attack based on that matter. We do not find the punishment imposed here to run afoul of the Double Jeopardy Clause of the Fifth Amendment.

## IV.

At the time of sentencing, the State offered evidence concerning the estimated gross income of the book store and the previous violations of obscenity laws at that store. The trial judge imposed a fine of $500 for each of the 116 convictions, amounting to a total of $58,000. Relying principally upon *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), appellant argues that the sentences are illegal because they contravene the Eighth Amendment's mandate against the imposition of excessive fines or cruel and unusual punishments. Specifically, appellant contends that the total fine imposed is grossly disproportionate to the criminal activity found to have occurred on a single day at a single time and place.

It has long been recognized that a sentence must not be so disproportionate to the offense as to constitute a cruel and unusual punishment. *Weems v. United States*, 217

U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910). Despite the considerable deference courts appropriately grant to legislative decisions concerning punishment, there is growing judicial awareness that occasionally circumstances will combine to produce a result that is so far out of synchronization with the overall concept and system of punishment in this country, and so grossly disproportionate to the gravity of the offense and the legitimate objectives of a civilized society, that it cannot be permitted to stand. The Supreme Court has recently grappled with these issues in *Solem v. Helm, supra; Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982); and *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). We have most recently addressed these questions in *Minor v. State*, 313 Md. 573, 576–86, 546 A.2d 1028 (1988); *Stanley v. State*, 313 Md. 50, 89–91, 542 A.2d 1267 (1988); and *State v. Davis*, 310 Md. 611, 623–39, 530 A.2d 1223 (1987). Helpful for their discussion of the history and meaning of the Eighth Amendment protections, these cases fall short of providing a definitive litmus test by which we may measure precisely when the constitutional limitation of reasonableness of a sentence has been passed. That determination, of necessity, must be made on a case-by-case basis.

We start with the proposition that the sentence of a $500 fine imposed on any single count in this case, being only half the maximum fine allowed by the legislature, is clearly reasonable. It is the aggregate of 116 fines that we are required to compare with the criminal transaction out of which they arose. In determining whether a total fine of $58,000 is excessive in this case, we need not embark upon the full comparative analysis utilized in *Solem v. Helm, supra*. We will, however, consider a number of surrounding circumstances. The crimes committed here, though misdemeanors, are offensive to common decency. The Maryland legislature, while seeking not to interfere with any citizen's First Amendment rights, has on a number of occasions labored to stanch the commercial flow of printed obscenity that has invaded our society and lined the pockets

of a few purveyors. We have no doubt that the legislature has considered commercial obscenity to be a serious problem.

When a corporation is the defendant in a criminal case, the only effective sanction is a fine. The trial judge here was made aware of the size of the particular operation. The fact that 116 different obscene publications were on display at a single time speaks somewhat to the magnitude of the business. Testimony was presented that the corporation has a gross annual income of at least $80,000 from this book store.

There was also evidence before the sentencing judge that the store or its employees had been the subject of 16 previous enforcement actions, 14 of which resulted in convictions, and that these previous actions had not persuaded the proprietor of the book store to cease its illicit operations. The State requested the imposition of the maximum fine of $1,000 on each count.

Cases from other jurisdictions largely side with the view taken by the State. As the United States Court of Appeals for the Second Circuit recently held, it generally will require an extraordinary set of circumstances to demonstrate that a cumulation of valid sentences for distinct offenses is cruel and unusual. *U.S. v. Golomb*, 811 F.2d 787 (2d Cir.1987). When a defendant is convicted of separate offenses and the sentences imposed are within statutory limits, courts have generally held that the consecutive effect of sentences does not constitute cruel and unusual punishment. *See, e.g., State v. Potts*, 11 Kan.App.2d 95, 713 P.2d 967 (1986); *State v. Koonce*, 731 S.W.2d 431 (Mo.App.1987); *State v. Freeman*, 702 S.W.2d 869 (Mo.App.1985). In recent federal cases, the same result has been reached. *See United States v. Andersson*, 803 F.2d 903 (7th Cir.1986) (consecutive sentences of seven and five years for mailing and conspiring to mail and receive child pornography not cruel and unusual); *United States v. Serhant*, 740 F.2d 548 (7th Cir.1984) (sentence of five years imprisonment for each of three counts of mail fraud, to be served consecutively, not

cruel and unusual); *United States v. Shaid*, 730 F.2d 225 (5th Cir.1984) (consecutive sentences for nine counts of mail fraud not cruel and unusual).

Considering all of the relevant factors in this case, we conclude that the cumulative punishments did not mount up to an excessive fine or to cruel and unusual punishment within the meaning of the Eighth Amendment.

JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.