13 A.3d 834

**Elroy MATTHEWS, Jr.**

v.

**STATE of Maryland.**

**No. 2801, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Feb. 7, 2011.

Byron L. Warnken (Elroy Matthews in Proper Person, on the brief, Hagerstown, MD), for appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen. on the brief), Baltimore, MD, for appellee.

Panel: MATRICCIANI, KEHOE, and CHARLES E. MOYLAN, JR., (Retired, Specially Assigned), JJ.

CHARLES E. MOYLAN, JR., J.

The appellant, Elroy Matthews, Jr., appeals from his resentencing on March 24, 2008, by Judge John Grason Turnbull, II in the Circuit Court for Baltimore County. The appellant's cause on this appeal is twice bereft, primarily on a foreclosing procedural ground but also, if we should reach them, on the substantive merits. These, however, are distinct issues and we will address each of them separately. Although the sentencing of the appellant has had a long and torturous history, only a small and recent fragment of his six-year travail is at all pertinent to our consideration of the procedural foreclosure. We will accordingly reserve our recounting of much of the factual background until we turn our attention to the factual merits of the case.

### Prologue to Procedural Foreclosure

What seems at first to be a legal problem frequently turns out to be a linguistic or a semantic problem. On this appeal, we come face to face with the enigma that an illegal sentence is not always an illegal sentence. We do not mean this as doubletalk. In the context of direct appellate review, there are a wide variety of reasons why a sentence, or a sentencing procedure, may be so seriously flawed as to give rise to the appellate reversal or vacating of the sentence. In this context, such flaws are, and are regularly referred to as, illegal sentences. There are, however, procedural rules regulating the form that challenges to such sentences may take and imposing strict limitations on when such challenges may be made. There is also, by dramatic contrast, a very different context in which a sentence may be challenged at any time, subject to no filing deadline of any sort. Maryland Rule 4–345(a) provides:

**THE COURT MAY CORRECT AN ILLEGAL SENTENCE AT ANY TIME.**

The semantic problem arising out of those very different contexts is that the phrase "illegal sentence" has variable connotations and shifting meanings. Of all the illegal sentences that might deserve immediate appellate vacating in the broad context of direct review, only a small fraction are even

cognizable in the austerely limited context of Rule 4–345(a) review. For the very reason that its meaning may shift, the phrase "illegal sentence" should never be lifted out of that first context and casually inserted into the second. The words may be the same, but they no longer mean the same thing. We cannot agree with Gertrude Stein that an illegal sentence is an illegal sentence is an illegal sentence, because sometimes it is not.

### Procedural History

The appellant was found guilty upon his pleas of guilty by Judge Turnbull on December 3, 2003, for attempted first-degree murder, for two counts of first-degree assault, and for the use of a handgun in the commission of a crime of violence. He was sentenced by Judge Turnbull on April 4, 2004.

On October 23, 2007, the appellant was granted partial post-conviction relief because of a failure of the prosecution to fulfill its part of a plea bargain at the original sentencing hearing of April 21, 2004. The case was remanded to Judge Turnbull for resentencing. At a new sentencing hearing on March 24, 2008, Judge Turnbull reimposed the original sentence. The only part of the sentence about which the appellant now complains is the sentence for the attempted first-degree murder. That sentence was one of life imprisonment with all but 30 years suspended. The appellant attempted to appeal that sentence. This Court properly treated that effort as an application for leave to appeal, which application we denied on May 18, 2009. Much of the merit that might have inhered in the appellant's complaint about the resentencing effectively died with that denial of leave to appeal on May 18, 2009. We are not suggesting that there was any such merit. We are simply asserting that whether there was or was not any merit, in the broad sense of merit cognizable on direct review, no longer makes any difference. The only complaint about the sentence that may have survived is a far more limited one.

On January 8, 2010, the appellant filed a Motion to Correct an Illegal Sentence pursuant to Maryland Rule 4–345(a).

Judge Turnbull denied that motion on January 26, 2010, and this appeal timely followed from that denial. Our initial focus will be exclusively on that denial of January 26, 2010. If we were to state that the issue before us is whether the sentence of March 24, 2008 for attempted first-degree murder was a legal sentence, we might be posing the question far too broadly. The pertinent issue is not whether that sentence might in some circumstances and in some contexts be deemed questionable or improper or even "illegal." The issue is the far more narrow one of whether that sentence was literally "illegal" within the stern contemplation of Rule 4–345(a)'s extraordinary exemption from the normal filing deadlines. Much that might have been cognizable had direct review of the resentencing been granted is not cognizable under Rule 4–345(a) review. It is critical not to ignore that difference in the scope of the respective reviews.

### The Narrow Window of Rule 4–345(a) Review

In exempting a challenge to an actually "illegal" sentence from the ordinary preservation requirements, it was *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949 (1985), that first focused on the extraordinary relief sometimes provided by Rule 4–345(a):

> We hold that *when the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal* even if no objection was made in the trial court. Such review and correction of an illegal sentence is especially appropriate in light of the fact that Rule 4–345(a), formerly Rule 774 a, provides that *"[t]he court may correct an illegal sentence at any time."* Thus, a defendant who fails to object to the imposition of an illegal sentence does not waive forever his right to challenge that sentence.

(Emphasis supplied).

What *Walczak* decided was that a trial judge may correct an illegal sentence at any time even if the issue has not been properly preserved by timely objection. The illegality in the *Walczak* case itself was that the trial judge had ordered restitution to be made for a crime of which the defendant had

not been convicted. Since no statute authorized such restitution, it was held to be an illegal sentence. "[R]estitution is punishment for the crime of which the defendant has been convicted. Restitution depends on the existence of that crime and the statute authorizing the court to order restitution only where the court is otherwise authorized to impose punishment." 302 Md. at 429, 488 A.2d 949. That part of the sentence that ordered restitution was not authorized by law.

Within the year, this Court addressed the limited applicability of *Walczak v. State* to substantive and facial illegality as opposed to mere procedural flaws in the sentencing process. In *Corcoran v. State,* 67 Md.App. 252, 254–56, 507 A.2d 200, *cert. denied,* 307 Md. 83, 512 A.2d 377 (1986), we held that an "illegal sentence" within the contemplation of Rule 4–345(a) "has obvious reference to a sentence which is beyond the statutorily granted power of the judge to impose."

The appellant claims that he is exempted from the otherwise foreclosing effect of Maryland Rule 1085 by *Walczak v. State,* 302 Md. 422, 488 A.2d 949 (1985). He reads *Walczak* far too broadly.

In holding that an illegal sentence may be reviewed on appeal even if not objected to below, *the Court of Appeals was very careful to limit the exemption to a situation where the sentence was illegal in itself, a sentence "not permitted by law."* 302 Md. at 427, 488 A.2d 949. *The Walczak opinion was not dealing with alleged procedural flaws in the sentencing hearing itself....*

The appellant's contention in this regard is not only bereft of support in the case law, it is bereft of logic as well. *The notion of an "illegal sentence" within the contemplation of the Walczak decision deals with substantive law, not procedural law. It has obvious reference to a sentence which is beyond the statutorily granted power of the judge to impose. It does not remotely suggest that a sentence,* proper on its face, *becomes an "illegal sentence" because of some arguable procedural flaw in the sentencing procedure.* For the appellant to prevail on his line of reasoning would create an absurdity. A sentencing procedure (and, by analogy, a

probation revocation hearing) is more informal in nature than a trial upon the merits. It is before a judge and not a jury. The more rigid rules of evidence are generally not applicable. It would create a ridiculous anomaly to hold that challenges to errors in the more tightly scrutinized trial itself may be forfeited through failure to object, whereas challenges to errors in the looser and more informal proceeding are always preserved even absent objection. *Walczak* did not remotely suggest such a bizarre and incongruous result.

(Emphasis supplied).

In *State v. Kanaras*, 357 Md. 170, 185, 742 A.2d 508 (1999), Judge Eldridge stressed the distinction that illegal or improper acts by various parties to the total sentencing phenomenon do not, *ipso facto*, make the sentence itself illegal and, therefore, reviewable under Rule 4–345(a). In the *Kanaras* case, the Court of Special Appeals had earlier agreed with the petitioner that his "sentence of life imprisonment subsequently became 'illegal' under the ex post facto prohibition because 'actions by the Parole Commission, Commissioner of Correction, and the Governor have, in effect, changed the life sentence (with an expectation by the sentencing judge of parole in eleven years) to a life sentence without the possibility of parole.' " 357 Md. at 172, 742 A.2d 508. On the appeal by the State, the Court of Appeals reversed the decision of this Court that the limitation on parole had rendered the sentence "illegal."

> The prior acts of the Parole Commission and the Commissioner of Correction, which had the effect of denying inmates in Kanaras's position the parole consideration to which they were entitled under the statutory scheme, did not render illegal Kanaras's sentence. The illegality was in the conduct of the Parole Commission and the Commissioner of Correction; it did not inhere in Kanaras's sentence.

357 Md. at 185, 742 A.2d 508 (emphasis supplied).

While observing that "[s]uch illegality was subject to correction through a proper proceeding," pointing out several reme-

dial possibilities, the Court of Appeals steadfastly held that the sentence itself did not constitute an "illegal sentence" within the contemplation of Rule 4–345(a). "A motion under Rule 4–345(a) to correct an illegal sentence ... was not an appropriate action." Id.

In *Evans v. State*, 382 Md. 248, 278–79, 855 A.2d 291 (2004), the Court of Appeals pointed out that a trial court error during the sentencing proceeding does not necessarily make the resulting sentence itself illegal.

> The State correctly argues that, as a general rule, *a Rule 4–345(a) motion to correct an illegal sentence is not appropriate where the alleged illegality "did not inhere in [the defendant's] sentence." State v. Kanaras, supra,* 357 Md. at 185, 742 A.2d at 517. A motion to correct an illegal sentence ordinarily can be granted only where there is some illegality in the sentence itself or where no sentence should have been imposed. On the other hand, *a trial court error during the sentencing proceeding is not ordinarily cognizable under Rule 4–345(a) where the resulting sentence or sanction is itself lawful.*

(Emphasis supplied).

█ An illegal sentencing procedure does not, *ipso facto,* produce an illegal sentence. That may be a nuance, but it is an important one. *See also Randall Book Corp. v. State,* 316 Md. 315, 322–23, 558 A.2d 715 (1989) ("Appellant's remaining contention, that the sentencing judge was motivated by impermissible considerations, does not fall into the same category. It is true ... that whether the trial judge was motivated by ill-will, prejudice, or other impermissible considerations in imposing sentence shall be considered on direct appeal. However, *while improper motivation may justify vacation of the sentence, it does not render the sentence illegal within the meaning of Rule 4–345.*") (emphasis supplied).

In *State v. Wilkins*, 393 Md. 269, 273, 900 A.2d 765 (2006), Judge Greene spoke for the Court of Appeals.

An illegal sentence is a sentence "not permitted by law." In *Holmes v. State,* 362 Md. 190, 195–96, 763 A.2d 737, 740

(2000) this Court stated that *"[a] sentence that is not permitted by statute is an illegal sentence."* . . .
*See also Burch v. State,* 346 Md. 253, 289, 696 A.2d 443 (1997) (*"Not every procedural irregularity,* even in a capital sentencing proceeding, *results in 'a sentence not permitted by law.'* "). In other words, *a motion to correct an illegal sentence is not an alternative method of obtaining belated appellate review of the proceedings that led to the imposition of* judgment and *sentence* in a criminal case.

(Emphasis supplied).

The defendant, who was attacking as "illegal" a sentence that had been imposed 32 years earlier, argued in *Wilkins* that the trial judge had failed even to recognize that he had the discretion to suspend a part of the life sentence and that that failure even to exercise discretion was good cause to vacate the sentence and to remand for resentencing. This Court agreed that the sentence was "illegal" and vacated it. The Court of Appeals reversed us, stating that, even conceding that sentencing flaw, such a failure did not render the sentence "illegal" within the stern contemplation of Rule 4–345(a).

> *Even assuming,* without deciding, *that the sentencing judge,* in this case, *did not acknowledge his discretion to suspend all or a part of the life sentence* imposed, *the sentence actually imposed was not illegal.* Therefore, *an alleged defect resulting from failure to acknowledge* the *discretion* to suspend any portion of the life sentence *does not render the sentence illegal.*

393 Md. at 278, 900 A.2d 765 (emphasis supplied).

■ *State v. Wilkins* recognized the critical distinction that although a sentencing judge's failure to recognize that he has the discretion to suspend a part of a sentence would constitute good cause to vacate the sentence on direct appeal, it is not good cause to vacate a sentence under Rule 4–345(a). As Judge Greene pointed out:

> [I]n the present case, *if the sentencing judge abused his discretion, the error was a proper subject for appellate*

*review on direct appeal.* It is clear that Wilkins did not raise any issue concerning the propriety of his sentence on direct appeal to the Court of Special Appeals in 1972. *Having failed to raise the issue on direct appeal, he may not raise it here, under the guise of a motion to correct an illegal sentence.*

393 Md. at 280, 900 A.2d 765 (emphasis supplied).

In *Hoile v. State,* 404 Md. 591, 621, 948 A.2d 30 (2008), Judge Harrell similarly observed for the Court of Appeals:

An illegal sentence properly is corrected only "where there is some illegality in the sentence itself or where no sentence should have been imposed." *Evans v. State,* 382 Md. 248, 278 [855 A.2d 291.] ... *[T]he language in Evans does not make a sentence illegal merely because a required procedure was not followed* prior to the court imposing the sentence.

(Emphasis supplied).

Federal Rule of Criminal Procedure 35 is verbatim with Maryland Rule 4–345(a), as it provides, "The court may correct an illegal sentence at any time." In *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), the Supreme Court dealt with a situation in which a prisoner at his sentencing was erroneously denied the opportunity, by way of allocution, to make a statement on his own behalf. No direct appeal, however, was ever taken. The Supreme Court held, 368 U.S. at 430, 82 S.Ct. 468, that relief pursuant to Federal Rule 35 was not available.

[A]s the Rule's language and history make clear, the narrow function of rule 35 is to permit correction at any time of an illegal *sentence,* not to reexamine errors occurring at the trial or other proceedings prior to the imposition of sentence. *The sentence in this case was not illegal. The punishment meted out was not in excess of that prescribed by the relevant statutes.*

(Emphasis supplied).

The appellant relies heavily on *Solorzano v. State,* 397 Md. 661, 919 A.2d 652 (2007). *Solorzano,* however, is not a Rule 4–345(a) case. It was a direct appeal taken immediately from

the sentence itself. It cited none of the Rule 4–345(a) cases and had no occasion even to address the limited scope of Rule 4–345(a) review. On this issue, it is totally inapposite.

### Rule 4–345(a) Is Not A "Reopen, Sesame"

■ Emerging from this survey of a quarter of a century of Maryland caselaw is the overarching principle that the values of finality and cloture still abide. Rule 4–345(a) has been consistently interpreted to be a narrow window that permits a trial judge to correct at any time a sentence that is obviously and facially illegal in the sense that it is a sentence that the court had never been statutorily authorized to impose. It is not, on the other hand, some unlimited "Reopen, Sesame," licensing the court to revisit and to relitigate issues that have long since become *faits accompli.*

■ The present case is a textbook example of why we do not lightly disturb the law's repose. In this appeal of a Rule 4–345(a) ruling on January 26, 2010, we are not being asked to measure a sentence against an authorizing statute. We are being asked, instead, to pore over transcripts and to interpret facts *de novo* from a plea negotiation on December 3, 2003 and a sentencing on April 4, 2004. We are being asked to relitigate and to amend in the appellant's favor the post-conviction hearing rulings of Judge Levitz of October 23, 2007. We are being asked to make our own *de novo* assessment of what was said and what was done at a resentencing on March 24, 2008. Not one of those events, however, is still eligible for direct review. We are here being asked to do something that has never been the function of Rule 4–345(a). As Judge Greene stated clearly for the Court of Appeals in *State v. Wilkins,* 393 Md. at 273, 900 A.2d 765, in 2006:

> *[A] motion to correct an illegal sentence is not an alternative method of obtaining belated appellate review* of the proceedings that led to the imposition of ... sentence in a criminal case.

(Emphasis supplied)

### Has There Been a Silent Revolution?

We are not unmindful of *Cuffley v. State,* 416 Md. 568, 7

A.3d 557 (2010),[1] in which footnote 1, 7 A.3d at 561, states:

We have held that a sentence that exceeds the sentence to which the parties agreed as part of a plea agreement is an illegal sentence within the meaning of Rule 4–345(a). *Dotson v. State*, 321 Md. 515, 521–22, 583 A.2d 710 (1991).

We deem it highly unlikely, however, that the Court of Appeals would, in a single passing sentence in a footnote, effectively and deliberately overrule the rationale that permeates *State v. Kanaras* (1999); *Evans v. State* (2004); *State v. Wilkins* (2006); and *Hoile v. State* (2008), not to mention *Corcoran v. State* (1986), without so much as mentioning a single one of those cases. The footnote itself, moreover, relies exclusively on *Dotson v. State* (1991), a case that was decided before any of the opinions mentioned above, except for *Corcoran*, had ever been written. *Dotson*, moreover, albeit involving a breached plea agreement, was not a Rule 4–345(a) case and had no occasion to deal with that rule's stringently limited exemption from the ordinary timeliness requirements. It was, rather, a case in which the Court of Appeals entertained Dotson's direct appeal from a sentence increase by a sentence review panel.

As we have labored to point out, what may have been deemed an "illegal sentence" in the context of direct appellate review (to wit, in the *Dotson* case) may not be, and frequently

---

1. In addition to *Cuffley v. State*, the appellant strenuously urges upon us the additional case of *Baines v. State*, 416 Md. 604, 7 A.3d 578 (2010), decided the same day as *Cuffley*. *Baines*, however, is totally inapposite to the issue under consideration. It is not a Rule 4–345(a) case. It is a challenge to a sentence, based on an alleged breach of a plea agreement, on a direct appeal from that sentence. It does not remotely concern the critical difference between those challenges to a sentence that are cognizable on direct review and the far more limited challenges that are cognizable on Rule 4–345(a) review. As a purely surface issue, both *Cuffley* and *Baines*, of course, address the same factual issue, the impact of a breached plea agreement. The two cases, however, are called upon to examine that issue at two diametrically different levels of appellate review. The issue before us is one of reviewability, and we are concerned, therefore, not with the similarity of the two cases but with the dissimilarity. The *Baines* opinion simply had no occasion to address the issue now before us, and it did not do so.

is not, an "illegal sentence" in the very different context of Rule 4–345(a) review. As applied to *Cuffley,* the phrase from *Dotson* was out of context. We cannot imagine that 25 years of Rule 4–345(a) caselaw is being overruled on the basis of an opinion in *Dotson* that never dealt with or even mentioned Rule 4–345(a). *Stare decisis* is not so blithely evanescent.

Neither the majority opinion in *Cuffley* nor any of three very thorough dissenting opinions so much as mentioned the critical threshold subject of Rule 4–345(a)'s very limited availability. It is inconceivable that all four opinions deliberately ignored 25 years of well-established caselaw. The only reasonable inference is that this subject of Rule 4–345(a)'s limited scope never came up and was never considered.

It is, of course, quite possible that the Court of Appeals might, when and if expressly required to do so, deem a sentence in contravention of a plea agreement just as "illegal" as a sentence not authorized by the Legislature. On the other hand, the equating of the two does not automatically follow and would call for some analysis. In the meantime, we decline to treat as authoritative precedent what is, at most, a sub-silentio implication. Appellate courts do not erode or compromise, even if not literally overturn, 25 years of caselaw without some acknowledgment of taking so significant a step. We will not blur the line between broad direct review and more tightly limited Rule 4–345(a) review.

### The Merits of the Resentencing

Our attention now turns, *arguendo,* to the merits of the resentencing. If we are right about the threshold inapplicability of Rule 4–345(a) review to the type of claim being made by the appellant, the factual merits of what happened, step by step, over the six years of this sentencing travail are completely immaterial. If, on the other hand, the Court of Appeals has, *sub silentio,* brought a sentence in alleged violation of a plea agreement within the purview of Rule 4–345(a), it becomes necessary to determine whether Judge Turnbull's resentencing of March 24, 2008, was in violation of the plea agreement of December 3, 2003, and would, therefore, have

been "illegal" within the contemplation of Rule 4–345(a). Our holding is that even if Rule 4–345(a) applies, it was not offended.

Although our critical focus will be on the resentencing of March 24, 2008, the antecedent stages of the case do throw some interpretive light on that resentencing.

**June 17, 2002: The Crime**

The circumstances of the crime shed significant light on the whole sentencing phenomenon because it became increasingly clear that Judge Turnbull's firm and resolute attitude about an appropriate sentence was the unquestioned result not of anything said by the appellant, by defense counsel, by the appellant's witnesses, or by the sentencing recommendation of the State but reflected his own independent appraisal of the crime itself and of the appellant as its perpetrator.

The appellant had originally been involved in a romantic relationship with Christine Davis, until she terminated the relationship. On June 17, 2002, he entered Ms. Davis's residence through a window in the middle of the night, carrying a nine-millimeter pistol. He found Ms. Davis in bed with Leroy Jackson. In the ensuing struggle, Leroy Jackson was shot, sustaining non-fatal wounds. Ms. Davis fled to the nearby bedroom of her brother, Marvin Davis. The appellant pursued her there. Another struggle ensued, in which both Christine Davis and Marvin Davis were shot. Marvin Davis ultimately wrestled the gun away from the appellant, who then fled the scene.

At the original sentencing on April 21, 2004, Judge Turnbull's attitude about the need for punishing such "outrageous behavior" was clear.

THE COURT: This case is not about Mr. Matthews' attempts at suicide, whether feigned or not. It's about the fact that he *shot three individuals and chased the one victim into the closet and shot her again. This is outrageous behavior on this man's part and he could be facing a much more severe sentence.* Fortunately, all of these victims lived. Two of them were taken to Shock Trauma.

*If in fact he's ever paroled, it should be at sufficient an age that he would no longer pose a threat to the victims in this case.* The Court is concerned about that.

(Emphasis supplied).

At the resentencing on March 24, 2008, Judge Turnbull made it clear that he had never bound himself by any plea agreement. Not only was his sentence unchanged but his firmly held reasons for sentencing remained unchanged.

THE COURT: All right. I'm certainly not going to go back into the background and the facts of this case, because they were stated back in February 2004 and they have been obviously reiterated today in detail.

Suffice it to say that *this was an outrageous crime* that happened back in June of 2002 and that there are many reasons for sentencing an individual. One of them is to form a sentence for rehabilitation.

And I certainly am pleased with what I have heard and what has been said on behalf of Mr. Matthews, with the progress that he has made there at the Patuxent Institute and through the Division of Correction itself. He has obviously maintained a good record. He has worked, he has done well, and he's had absolutely no problems, according to the record within this particular institution. And I commend him for that.

*Another reason for sentencing is punishment. And another reason for sentencing is to protect society.*

*The fact that this man broke into a house in the middle of the night and subsequently shot three individuals means that in spite of the fact that I want him to be rehabilitated, he also has to be punished for those acts.*

. . . .

The Court gave this case a great deal of thought in going over all of the psychiatry records, by ordering a psychiatric evaluation on its own prior to sentencing and a presentence investigation. *The Court gave this case due consideration.*

Then I've listened carefully to everyone on both sides today again and have given it again due consideration.

*I certainly feel for the family of Mr. Matthews. But I have not much sympathy for him, given the facts of this case on June 17, 2002.*

(Emphasis supplied).

### December 3, 2003: The Guilty Plea

Simply to reduce the clutter, let us hasten to point out that although the appellant received sentences on each of four convictions, the only one that concerns us is his sentence for attempted first-degree murder. In return for the appellant's plea of guilty to attempted first-degree murder, the State agreed to recommend that the sentence should be within the sentencing guidelines, which suggested a sentence of between 23 and 43 years. The State pointed out, however, that it would be recommending a sentence "at the top of the guidelines."

In terms of possible confusion, two problems loomed. The first was that between the guilty plea of December 3, 2003 and the actual sentencing on April 21, 2004, four and one-half months intervened. The second problem is that no express reference was ever made to a distinction between the formal sentence (before any possible suspension) and the "hard time" portion of the sentence (after a part of the sentence has been suspended).

Although no express reference was made to the difference between the two types of "cap," the formal sentence (with parole implications) and the "hard time" sentence, it does appear, in fairness to the State, that the State's recommendation was, indeed, with reference to "hard time." In setting forth the terms of its agreement with the appellant, the State asserted:

[The Prosecutor]: There have been plea negotiations in case ending in 2799 which are as follows: The State is going to call count one of the criminal information charging this defendant with attempted first-degree murder of Christine Davis, count five charging the Defendant with first-degree assault of Leroy Jackson, count six charging the Defendant with first-degree assault of Marvin Davis, and count eleven

charging this defendant with unlawful use of a handgun in the commission of a crime of violence.

The Defendant will tender a guilty plea to each of those counts. *In return for the Defendant's guilty pleas,* the State, upon a finding of guilt, has agreed to enter a nol pros in case number –2–CR–2282. The State will enter a nol pros as to the balance of all remaining counts. *At disposition, your Honor, the State is going to be arguing for incarceration within* the—to *the top of the guidelines range.*

The guidelines range is twenty-three to forty-three years. *The State is going to be asking for incarceration of forty-three years.* Defense counsel is free to argue for whatever disposition they deem appropriate. *That cap is a cap as to actual and immediate incarceration at the time of initial disposition.*

(Emphasis supplied).

Although it could have been phrased more artfully, the reference to "actual incarceration" seems clearly to have referred to "hard time" to be served. To characterize what the State there said as an ambiguity is to make a significant stretch in the appellant's favor. If the presumption for resolving ambiguities were pointing in the other direction, this would be a "no-brainer."

In assessing that plea-bargaining hearing of December 3, 2003, we would take the opportunity to note that the parole implications of a formal sentence of life imprisonment, above and beyond any issue with respect to "hard time," are today so important that a defendant offering a guilty plea should be informed about them by someone—by the court or the prosecutor or the defense attorney. If none of those parties was on December 3, 2003, even thinking about the parole implications, he should have been. This omission, moreover, might be a very important factor if we were reviewing the appellant's guilty plea. We are not, however, now examining the voluntary and knowing character of that plea. We are examining the very different question of whether the subsequent sentencing was in compliance with the terms of the plea agreement.

On this very different issue, the focus is not on what the plea agreement ideally should have been but on what it actually was. The harsh reality seems to have been that on December 3, 2003, nobody was even thinking about the parole implications of a term of life imprisonment and nobody was even thinking, therefore, about the legal significance of the formal sentence itself. In any event, Judge Levitz in his post-conviction ruling resolved the question of what the terms of the plea agreement were, and we are simply looking at whether the resentencing of March 24, 2008, was in compliance with what Judge Levitz ordered to be done.

Judge Turnbull reiterated the State's recommendation and also stressed that he was not bound by the recommendation and that he was free to impose any sentence "up to a maximum of life imprisonment." At the end of his statement, moreover, the appellant agreed as to what the plea agreement had been.

> The Court: You are entering a guilty plea to the first count of attempted first-degree murder, that carries up to life imprisonment; count five, first-degree assault, carries up to twenty years [sic], count six, first-degree assault, that carries up to twenty-five years; count eleven, use of a handgun in a crime of violence, that carries twenty years with a mandatory minimum of five without parole.
>
> Your guidelines are twenty-three to forty-three years. *The State is asking for a sentence of forty-three years to be served.* The Court has agreed to cap any sentence and your defense attorneys are free to argue. And *theoretically I can give you anything from the mandatory minimum on the one count, which is five years without parole, up to a maximum of life imprisonment.*
>
> *Do you understand what the plea agreement is?*
>
> [The Defendant]: *Yes sir.*

(Emphasis supplied).

### April 21, 2004: The Initial Sentencing

Any conceivable ambiguity of December 3, 2003, (we do not see one) remained unresolved four and one-half months later

as everyone, at the sentencing hearing on April 21, 2004, seemed to be oblivious to the fact that there even might be an ambiguity or that the different "caps" within the ambiguity could yield different results in terms of long range incarceration. No one was even thinking about such an issue. The defense called seven witnesses. The State had all three of the shooting victims testify as to the effects of the crime on them. The appellant took the stand and apologized to the victims.

After talking about the seriousness of the crime, the State concluded its argument with the following recommendation:

In conclusion, your Honor, the State firmly believes, based on the psychiatric report you have, the presentence investigation, that this defendant needs to be punished. *The guidelines that the State agreed to,* your Honor, *was a sentence of incarceration, actual incarceration from today* not more than forty-three years. I'm asking the Court to impose a sentence of life imprisonment, suspend all but forty-three years of that. No objection to recommendation to Patuxent Institution, your Honor.

In making his allocution, the appellant voiced no protest with respect to the State's recommendation. In closing argument on sentencing, neither did defense counsel. After stating his opinion about the seriousness of the crimes, Judge Turnbull pronounced the following sentence.

Count one, it's the judgment and sentence of this Court that Defendant be confined to the Division of Correction for life. I will suspend all but thirty years accounting from June 18th, 2003.

Judge Turnbull also explained the avenues of possible review open to the appellant.

He's got thirty days to take an appeal to the Court of Appeals of Maryland. If he chooses to do so, he must notify my court reporter in writing within ten days to prepare a transcript of these proceedings. He's got ninety days to ask me to reduce the sentence. I can't increase it. He's got a right within thirty days to ask for a three-judge review panel. I would not be a member of that panel. I

could be consulted as to why I gave him that sentence. That review panel could increase the sentence, decrease it, or allow it to remain the same. Any and all of these must be filed in writing with the clerk's office of this Court.

The appellant did not protest about the formal sentence of life imprisonment at the sentencing hearing. He did not subsequently ask Judge Turnbull to reduce the sentence. He did not ask for a three-judge sentence review panel. He did not take an appeal from the sentence.

**June 1, 2007: Amended Petition For Post–Conviction Relief**

The appellant's case lay dormant for over three years. On June 6, 2007, the appellant filed an Amended Petition for Post–Conviction Relief. He made seven allegations of trial error. At the hearing on the petition before Judge Dana M. Levitz on September 26, 2007, he raised the additional allegation that his original sentence on April 21, 2004, had been illegal.

Although the transcript from the guilty plea hearing of December 3, 2003, would actually seem to contradict the finding, Judge Levitz's Post–Conviction Opinion of October 23, 2007, found that the Assistant State's Attorney had, in his recommendation at sentencing, actually breached the plea agreement. That finding was based largely on the fact that the Assistant State's Attorney when he testified at the post-conviction hearing, "did not remember" what his initial promise had been. Defense counsel also "did not remember." It is not for us, however, to retry the post-conviction case on the basis of evidence that was not presented at the post-conviction hearing. Judge Levitz's finding in this regard was:

> [T]he Petitioner's allegation that the State erred in regards to the agreed-to sentencing recommendation has merit. *The Assistant State's Attorney testified at the post conviction hearing that he did not remember whether he promised to recommend "forty-three years" or "life suspend all but forty-three years" during the off-the-record plea negotiations. Trial Counsel testified that he did not remember*

*either.* The simple fact is that the Assistant State's Attorney said he was going to recommend "forty-three years" at the plea hearing, and actually recommended "life imprisonment, suspend all but forty-three years" at the sentencing hearing. When a defendant makes a plea agreement in which he bargains for a capped sentence and the cap is exceeded, breaching the agreement, the defendant is entitled to specific performance of the sentence cap that he bargained for. *Ogonowski v. State,* 87 Md.App. 173 [589 A.2d 513] (1991). Similarly, a defendant who makes a plea agreement in which he bargains for a certain sentence recommendation from the State, the defendant should be entitled to specific performance of the sentence recommendation if the State breaches the agreement.

(Emphasis supplied).

Judge Levitz also found, however, that the plea agreement was not a "binding agreement" and that Judge Turnbull, on resentencing, was "free to impose whatever sentence [he] feels appropriate." Judge Levitz's final order was:

Here, the Petitioner bargained for a sentence recommendation of "forty-three years", but instead got a sentence recommendation of "life suspend all but forty-three years." The Petitioner should get what he bargained for, thus his sentence will be vacated; *Petitioner shall get a new sentencing hearing during which the State will recommend "forty-three years" as promised. As this was not presented as a binding plea under Rule 4–243(c), the trial court upon resentencing shall be free to impose whatever sentence it feels appropriate.*

(Emphasis supplied).

No appeal was taken from those rulings at the post-conviction hearing.

### March 24, 2008:  The Resentencing

At the resentencing on March 24, 2008, the State, even if somewhat grumpily, made its recommendation that the sentence be one of forty-three years. Judge Turnbull, after an extended exchange with defense counsel about the appellant's

commendable signs of rehabilitation versus the appellant's deserving of punishment, reimposed the precise sentence that he had originally imposed in 2004.

In response to argument by appellant's counsel, Judge Turnbull insisted that he had never agreed to be bound by any sentencing limitation.

I didn't say I'd cap any sentence to be served at forty-three years.

At another point, he flatly asserted:

I can't conceive that I wouldn't tell someone that they could get anything up to life imprisonment

And that is exactly what I did say.

Judge Turnbull also summed up Judge Levitz's ruling.

He found Mr. League's argument was not proper. He did not find my sentence was improper.

The appellant filed an Application for Leave to Appeal the sentence, which this Court denied on May 18, 2009. At that point, all direct appeal of the sentence was over. All that remained was Rule 4–345(a) and its limited coverage.

**January 8, 2010: Motion to Correct an Illegal Sentence**

On January 8, 2010, the appellant filed a Motion to Correct an Illegal Sentence pursuant to Rule 4–345(a). On March 12, 2010, Judge Turnbull denied the motion. This appeal follows from that denial.

### The Sentence Was Not Illegal

█ Even assuming, *arguendo*, that a sentence in ostensible violation of a plea agreement is properly on the table at a Rule 4–345(a) hearing, Judge Turnbull's resentence of March 24, 2008, was not an "illegal sentence," in any connotation of the phrase. We are not retrying the post-conviction case before Judge Levitz. The question before us is that of whether Judge Turnbull, at resentencing, complied with the mandate of Judge Levitz. He did.

Judge Levitz had ruled that Judge Turnbull "upon resentencing was free to impose whatever sentence [he] feels

appropriate." The resentence certainly did not exceed that open-ended range. It was, moreover, within the statutory range. Maryland Code, *Criminal Law Article*, § 2–205 expressly provides:

> A person who attempts to commit murder in the first degree is guilty of a felony and on conviction is subject to imprisonment not exceeding life.

A sentence of life imprisonment with all but 30 years suspended was, accordingly, not an illegal sentence and Rule 4–345(a), even if applicable, was not offended.

To the extent to which the appellant further complains that the State made its amended recommendation not with a grin but a grimace, that allegation about a grumpy prosecutorial demeanor would, by no stretch of the imagination, render the sentence itself "illegal." Even if the sentence itself can squeeze under the coverage of Rule 4–345(a), a less than cheerful and enthusiastic recommendation by the State cannot.[2]

\* \* \*

The State has moved that we strike the 25–page Appendix to the Appellant's Reply Brief, in which the appellant printed the full text of both *Cuffley v. State* and *Baines v. State*, recent opinions of the Court of Appeals that had not yet appeared in the Maryland advance sheets. Without anguishing unduly over the literal propriety of the Appendix pursuant to Maryland Rule 8–504(b), we cannot in good grace grant the motion, having found the ready availability of the opinions to be both convenient and helpful.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

2. As any parent who has ever ordered a child to apologize soon learns, there are at least fifty ways to say, "Sorry," and almost all of them are, at best, ambiguous.